## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No. 8:25-cv-2580

PAINT NAIL BAR FRANCHISE
COMPANY, LLC, a Florida limited
liability company,

            Plaintiff,

v.

PAINT TAMPA LLC, a Florida limited
liability company, DUFFEY & CO LLC, a
Florida limited liability company,
BROOKLYN DUFFEY, an individual, and
ROBERT JOSEPH DUFFEY, an
individual,

            Defendants.

### VERIFIED COMPLAINT

Plaintiff, Paint Nail Bar Franchise Company LLC, sues Defendants, PAINT

Tampa LLC, Duffey & Co LLC, Brooklyn Duffey, and Robert Joseph Duffey, and

alleges:

### JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction pursuant to

18 U.S.C. § 1836(b)(1) as to the claims asserted under the Defend Trade Secrets Act

("DTSA"), and 15 U.S.C. § 1051, *et seq.* as to the claims asserted under the Lanham

Act.

2.      This Court has original subject matter jurisdiction as to the claims other than those based on the DTSA, under 18 U.S.C. § 1836(b)(1), because those claims are so related to the claims brought under the DTSA that they form a part of the same case or controversy.

3.      This Court has original subject matter jurisdiction as to the claims other than those based on the DTSA and Lanham Act, under 28 U.S.C. § 1367 because those claims are so related to the claims brought under the DTSA and Lanham Act that they form a part of the same case or controversy.

4.      Further, an actual justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C §§ 2201-2202.

5.      Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendants are subject to the court's jurisdiction with respect to this action in this district, and pursuant to the parties' Franchise Agreement (defined below).

## PARTIES

6.      Plaintiff, Paint Nail Bar Franchise Company LLC ("Paint Nail Bar" or "Plaintiff"), is a Florida limited liability company, having a principal place of business in Sarasota County, Florida.

7.     Defendant, PAINT Tampa LLC, is a Florida limited liability company with a principal place of business in Tampa, Florida.

8.     Defendant, Duffey & Co LLC, is a Florida limited liability company with a principal place of business in Tampa, Florida.

9.     Defendant, Brooklyn Duffey ("B. Duffey") is an individual and resident of Florida.

10.     Defendant, Robert Joseph Duffey ("R. Duffey" and with B. Duffey and PAINT Tampa LLC, the "Franchisee Defendants") is an individual and resident of Florida.

## FACTS

### The Paint Nail Bar Franchise System

11.     Paint Nail Bar is the franchisor of a System providing a retail business offering beautiful, hygienic nail salons where guests are welcomed with affordable luxury services, exceptional sterilization and safety standards, and impeccable customer service to the general public. Through and by virtue of a Trademark License Agreement with Mark Schlossberg, Paint Nail Bar licenses others to operate nail salons under the federally-registered trademarks "Paint Nail Bar" and "Paint Nail Bar A Luxury Nail Affair" (collectively, the "Marks").

12.     Through the expenditure of time, skill, effort, and money, Paint Nail Bar is the sole owner, and Paint Nail Bar as the sole licensor, have developed the

3

Marks, which have been used in the development, organization, and operation of a System of nail bars offering salon services to the general public.

13.    Paint Nail Bar has entered into Franchise Agreements for the operation of Paint Nail Bars at various locations throughout the United States, pursuant to which Paint Nail Bar licenses others the right to operate Paint Nail Bars using the Marks and System.

14.    The Paint Nail Bar System consists of the manner in which the franchisee is licensed to operate the Paint Nail Bar nail salon, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by Paint Nail Bar.

15.    Paint Nail Bar has developed the Marks and System for use in the operation of the licensed Paint Nail Bars, which include the following principal trademarks, which have been registered by Mr. Schlossberg on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark | Registration Number | Registration Date |
|---|---|---|
| PAINT NAIL BAR | 4874455 | December 22, 2015 |
| PAINT NAIL BAR A LUXURY NAIL AFFAIR | 5320334 | October 31, 2017 |

16.    The Marks and System have been used exclusively by Paint Nail Bar, and its designated licensees, in commerce in connection with the operation of Paint Nail Bars since 2016. Since that time, Paint Nail Bar has grown to over 30

locations in over a dozen states (including Defendants' formerly-franchised location).

17.    The Marks have become a valuable asset of substantial and inestimable worth to Paint Nail Bar. The Marks are a symbol of quality salon experience served by Paint Nail Bar. Paint Nail Bar has a vital economic interest in protecting its name and the Marks. The preservation and protection of its name and the Marks are essential the maintenance of the quality of Paint Nail Bars and the goodwill and reputation associated with them.

**The Franchised Business**

18.    On or about January 20, 2022, Paint Nail Bar entered into a Franchise Agreement with the Franchisee Defendants in connection with the eventual operation of a Paint Nail Bar located in Tampa, Florida (the "Franchise Agreement"). A copy of the Franchise Agreement is attached hereto as Exhibit A.

19.    The Franchise Agreement was personally guaranteed by B. Duffey and R. Duffey (collectively, the "Individual Defendants") pursuant to a Principal Owner's Guaranty (the "Guaranty").

20.    Prior January 20, 2022, the Franchisee Defendants had no connection with the nail salon industry, was not employed in the nail salon industry, and had not run a nail salon.

21.    Pursuant to the Franchise Agreement, the Franchisee Defendants

operated a Paint Nail Bar at 442 W. Kennedy Boulevard, Suite 160, Tampa, Florida (the "Franchised Business" or the "Salon").

22.    Following execution of the Franchise Agreement, and as required by same, Paint Nail Bar provided sufficient and ample training to the Defendants, and their employees, including pre-opening training, post-opening training, and Paint Nail Bar conducted multiple national Franchise Summits attended by the Defendants.

23.    The Salon commenced operations as a Paint Nail Bar in or about October 2024.

**The Franchise Agreement's In-Term and Post-Termination Obligations**

24.    The Franchise Agreement includes a number of important in-term and post-termination provisions, obligations, and prohibitions.

25.    For instance, the Franchise Agreement provides, in relevant part:

> 5.9    Exclusive Relationship.  We have granted the Franchise to you in consideration of and reliance upon your (and your Owners') agreement to deal exclusively with us. We would be unable to protect the Confidential Information against unauthorized use or disclosure or to encourage a free exchange of ideas and information among our franchisees if you (or your Owners) were permitted to hold interests in or perform services (other than you serving as an employed nail technician providing services directly to clients for a salon owned by others) for a nail salon or one or more similar facilities or businesses that offer the same or similar products and services customarily offered by PAINT Nail Bar® Salons, or an entity that grants franchises or licenses for any of these types of businesses, other than the Salon and other PAINT Nail Bar® Salons (a "**Competitive Business**").  You agree that, during the Term, neither you nor any of your Owners, directors, or officers (nor any of your or your Owners', directors', or officers' spouses) will:
>
> (a)    have any direct or indirect interest as an owner whether of record, beneficially or otherwise perform or engage in services as a director, officer, manager, employee, consultant, representative, or agent for, a Competitive Business (this restriction is not applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding);
>
> (b)    directly recruit or solicit for hire any of our employees or the employees of any PAINT Nail Bar® Salon without obtaining our or the employer's prior written permission (general advertising or solicitation directed to the public in general is not restricted;
>
> (c)    direct any prospective or existing business or economic opportunities away from us, our affiliate, the Salon or any other PAINT Nail Bar® Salon to a Competitive Business; or
>
> (d)    perform any act prejudicial or injurious to the goodwill associated with the Marks.

See Exhibit A at § 5.9.

26.    The Franchise Agreement further provides, with respect to post-termination obligations:

> 13.3    <u>Confidential Information</u>.  Upon termination or expiration of this Agreement, you and your Owners will immediately cease to use any of our Confidential Information in any business or otherwise and return to us all copies of the Manuals and any other confidential materials that we have loaned to you.

<u>See</u> Exhibit A at § 13.3.

27.    The Franchise Agreement also provides, with respect to post-termination obligations:

> 13.4    <u>Covenant Not to Compete</u>.  Upon termination of this Agreement for any reason or expiration of this Agreement, you agree that, for 2 years beginning on the effective date of termination or expiration(subject to extension as provided below), neither you nor any of your Owners, will
>
> (a)    have any direct or indirect, controlling or non-controlling interest as an owner whether of record, beneficial or otherwise in any Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site, or any other PAINT Nail Bar® Salon; provided that this restriction will not be applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent less than 3% of the number of shares of that class of securities issued and outstanding, or
>
> (b)    perform services as a director, officer, manager, employee, consultant, representative or agent for a Competitive Business which is located or operating at the Site or within a 5-mile radius of the Site.
>
> The time period during which these restrictions apply will be automatically extended, with respect to all persons that this Section covers, for each day during which any person covered by this Section is not complying fully with this Section.  You acknowledge that you and your Owners possess skills and abilities of a general nature and have other opportunities for exploiting these skills.  Consequently, our enforcing the covenants made in this Section will not deprive you or your Owners of personal goodwill or the ability to earn a living.

<u>See</u> Exhibit A at §13.4

## **Defendants' Default and Breach of the Franchise Agreement, and the Termination of Same**

28.    On August 29, 2025, Defendants – through counsel – sent a demand letter to Plaintiff, demanding that the Franchise Agreement be "rescinded in its entirety" on top of a demand of $950,000 in "damages incurred" (the August Letter"). A copy of the August Letter is attached hereto as <u>Exhibit B</u>.

29.    While Defendants sent the August Letter, they notably avoided an important fact: two weeks earlier, the Individual Defendants formed Duffey & Co for the purpose of operating a "Competitive Business" (as defined in the Franchise Agreement).

30.    In any event, and without knowing that the Individual Defendants had created Duffey & Co, a response to the August Letter was sent on September 8, 2025 (the "September Response"), in which Plaintiff refuted each of the claims set forth in the August Letter and noted that "PNB rejects any claim of rescission as legally and factually meritless." A copy of the September Response is attached hereto as Exhibit C.

31.    Despite the September Response, on or about September 10, 2025, Defendants began operating a competitive nail salon business in violation of their Franchise Agreement's in-term and post-termination non-competition provisions.

32.    Specifically, just two days after receiving the September Response, Defendants commenced operating "The Polish Society" from their formerly-franchised PAINT Nail Salon location.

33.    This competitive nail salon uses the same system, training, staff, support, appearance, and way of doing business as the formerly-franchised Paint Nail Bar Salon. Defendants' promotion of The Polish Society makes this clear:

 

(visited on September 15, 2025)

34.    The identical staff is being used to operate The Polish Society – i.e., the staff that was trained using the PAINT Nail Bar methods and techniques:



(visited on September 15, 2025)

35.    The Polish Society is identical in all material respects as the PAINT

Nail Bar Salon previously operated by the Franchisee Defendants:



(visited on September 15, 2025)

36.     Defendants are also benefiting from Google Reviews associated with PAINT Nail Bar:



(visited on September 15, 2025)

37.     Following confirmation of Defendants' violative conduct, Plaintiff (through counsel) issued a Notice of Termination to the Franchisee Defendants in light of their violations of the Franchise Agreement, amongst other relevant provisions. A copy of the Notice of Termination is attached hereto as Exhibit D.

38.     As set forth in the Notice of Termination, the Franchisee Defendants had (and have) a variety of post-termination obligations, including, but not limited to, those set forth in Section 13 of the Franchise Agreement.

39.     Upon the termination of the Franchise Agreement, the Franchisee Defendants failed to return the Confidential Information described in Section 13.3

of the Franchise Agreement.

40.     Notwithstanding the Notice of Termination, and notwithstanding their post-termination contractual obligations, as of the filing of this Complaint, Defendants continue to operate a Competitive Business (as defined in the Franchise Agreement).

41.     Specifically, notwithstanding the termination of the Franchise Agreement, Defendants, jointly and severally have continued operating the formerly-franchised Paint Nail Bar salon using the Paint Nail Bar System (as defined in the Franchise Agreement), without Paint Nail Bar's authorization, as evidenced by information posted online by Defendants.

42.     Worse yet, Defendants' conduct is being noticed by other franchisees in the PAINT Nail Bar system, risking systemic ruin if Defendants' conduct is not stopped:



(last visited September 15, 2025)

43.    Here, "mmiirraannddaar" is another PAINT Nail Bar franchisee, in Kentucky, and if Defendants' conduct is permitted to continue, all PAINT Nail Bar franchisees (including mmiirraannddaar) will feel entitled to violate their own franchise agreement's terms and obligations.

44.    Additionally, Defendants continue to use the same phone number for The Polish Society as they used in their formerly-franchised Paint Nail Bar Salon.

45.    Beyond this, Defendants also using information gathered while they were Paint Nail Bar franchisees. Specifically, upon information and belief, Defendants downloaded from Plaintiff's software platform (called Booker) and uploaded it to their new software platform.

46.    Upon further information and belief, using this customer information (i.e., Confidential Information), Defendants are contacting the Paint Nail Bar's customers and seeking to solicit their business, in violation of the Franchise Agreement.

47.    Moreover, the online system allows customers to book services with specific technicians of Defendants, all of whom appear to have worked for the Franchisee Defendants while the Franchisee Defendants operated a PAINT Nail Bar Salon.

48.    It is clear that – other than removing the Paint Nail Bar name, but not

the Marks – The Polish Society is identical to the formerly-franchised Paint Nail Bar Salon.

49.    Because Paint Nail Bar validly terminated the Franchise Agreement due to the Franchisee Defendants' non-curable defaults, the Franchisee Defendants are required to abide by the post-termination obligations of the Franchise Agreement, including the non-competition obligation.

50.    As of the date of this filing, Defendants are intending to continue operating (and continue to operate) the formerly-franchised nail salon, using the Marks and System, in violation of the Franchisee Defendants' post-termination obligations, as evidenced above.

51.    The Franchisee Defendants' failure to abide by the post-termination obligations required under the Franchise Agreement, and continued use the same technicians, training, and System, in connection with the operation of a salon at the site of the formerly-franchised nail salon has caused, and is continuing to cause, irreparable harm.

52.    Pursuant to Section 15.4 of the Franchise Agreement, the Defend Trade Secrets Act, and the Lanham Act, Plaintiff is entitled to recover, as the prevailing party, its costs and expenses, including legal fees and expenses, in connection therewith, against Defendants.

53.    Defendants have not voluntarily ceased their unlawful acts, thus necessitating the present lawsuit.

**COUNT I:**
**BREACH OF CONTRACT**
**(Post-Termination Provisions – Injunctive Relief)**
**(against the Franchisee Defendants)**

54.   Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

55.   The Franchise Agreement is a valid contract executed by Paint Nail Bar and PAINT Tampa LLC, and guaranteed by the Individual Defendants.

56.   The Franchisee Defendants breached the Franchise Agreement by continuing to use the Paint Nail Bar System following termination of the Franchise Agreement.

57.   Duffey & Co is aiding and abetting the Franchisee Defendants' conduct.

58.   The Franchisee Defendants breached the Franchise Agreement by continuing to operate a nail salon at the site of the formerly-franchised Paint Nail Bar nail salon, in violation of the covenants contained in the Franchise Agreement.

59.   As a result of the Franchisee Defendants' willful and intentional actions, the Franchisee Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm and injury to Paint Nail Bar.

60.    This is confirmed by the acts of other franchisees of the PAINT Nail Bar franchise system, using the same counsel to slowly remove franchisees from the franchise system.

61.    It is vitally important to Plaintiff's franchise system, and Plaintiff's other franchisees, that the Court enforce post-termination restrictive covenants and obligations in the Franchise Agreement, which expressly prohibit Defendants from operating their competing nail salon using Plaintiff's Confidential Information (as defined in the Franchise Agreement).

62.    Plaintiff has no means of enforcing the post-termination covenants and obligations in the Franchise Agreement – and remedying the irreparable harm that Plaintiff has suffered, and continues to suffer – other than to seek injunctive relief from this Court.

63.    Attorneys' fees and cost are permitted under the Franchise Agreement.

## COUNT II:
## DEFEND TRADE SECRETS ACT
### (against All Defendants)

64.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

65.    The Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, provides a private civil action for misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

66.    Plaintiff owns numerous trade secrets, including, but not limited to, its Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and phone number, related to products, proprietary contracts and contacts, and services used in interstate commerce.

67.    Each of Plaintiff's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person, who can obtain economic value from the disclosure or use of the information.

68.    Plaintiff's trade secrets are not readily ascertainable by the public as they are disclosed only to franchisees associated with Plaintiff.

69.    During the time period described above, Plaintiff's trade secrets were disclosed to the Franchisee Defendants for the sole purpose of expanding the Paint Nail Bar franchise system.

70.    Plaintiff has taken extensive measures to preserve and protect these trade secrets for the purpose of maintaining their competitive advantage in the marketplace.

71.     The aforementioned agreements explicitly provide for the protection of such trade secrets, as set forth herein, including requiring the return of all originals and copies of the confidential Operations Manual, and files and records to Plaintiff  upon expiration, termination, or nonrenewal of the Franchise Agreement; requiring former franchisees and their representatives to maintain the confidentiality of the information; and requiring former franchisees and their representatives to never use the information for any purpose other than operating a franchised business pursuant to the Franchise Agreement.

72.     Plaintiff, and the Franchisee Defendants agreed, that upon expiration, termination, or nonrenewal of the agreements they would never use, disclose, or permit the use or disclosure of Plaintiff's trade secrets in any manner whatsoever.

73.     Without authority or consent from Plaintiff, Defendants are using the business know-how, phone numbers, and customer contact information that they obtained while operating an improperly-competitive business for themselves, thereby misappropriating Plaintiff's trade secrets.

74.     Upon information and belief, Defendants used and are utilizing Plaintiff's confidential system and materials after the improper termination of the Franchise Agreement, and Plaintiff has not (and would not) consent to or authorized such use.

75.     Defendants intentionally, and without Plaintiff's permission or authorization, misappropriated and/or disclosed Plaintiff's trade secrets for their own economic benefit and with the intention and knowledge that their conduct would injure Plaintiff by, for example, causing Plaintiff to lose any customers successfully solicited by Defendants.

76.     As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and Defendants' willful, improper, and unlawful use of Plaintiff's trade secrets, Plaintiff has suffered and will continue to suffer irreparable injury.

77.     Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Plaintiff's trade secrets should be enjoined from further disclosure or use of Plaintiff's trade secrets.

78.     Defendants' conduct in misappropriating Plaintiff's trade secrets was, and continues to be, willful and malicious, warranting an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

**COUNT III:**
**TRADEMARK DILUTION**
**(15 U.S.C. § 1125(c))**
**(against All Defendants)**

79.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

80.    The Paint Nail Bar Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

81.    Defendants' action and conduct, as set forth herein, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

82.    Paint Nail Bar is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

83.    As a direct and proximate result of Defendants' wrongful conduct, Paint Nail Bar has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

84.    Pursuant to 15 U.S.C. § 1117, Paint Nail Bar is entitled to recover damages from Defendants caused by their unlawful use of the Paint Nail Bar Marks, in an amount to be determined at trial.

## COUNT IV:
## TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a) and Common Law)
### (against All Defendants)

85.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

86.     Paint Nail Bar has spent substantial sums to promote, and has generated substantial revenue and recognition from, the Paint Nail Bar Marks, which are distinctive.

87.     The distinctive Paint Nail Bar Marks have become impressed upon the minds of the trade and public and identifying Paint Nail Bar products and services, as part of a national franchise, and consumers understand that marks and logos to indicate the source or origin of such products and services provided in connection with nail salons.

88.     Paint Nail Bar has developed a large and valuable franchise system through its use of the Paint Nail Bar Marks, and the reputation and goodwill in those marks is of great value to Paint Nail Bar.

89.     Defendants have used in commerce the Paint Nail Bar Marks without Paint Nail Bar' consent or authorization.

90.     Such use of the Paint Nail Bar Marks is likely to confuse consumers into believing that Defendants and their nail salon are associated with, endorsed by, or sponsored by, Paint Nail Bar when they are not.

91.     Defendants' conduct constitutes false designation of origin, and unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and common law.

92.     As a result of Defendants' willful and intentional acts, Paint Nail Bar has incurred attorneys' fees and expenses.

93.     Defendants have caused and, unless restrained by this Court, will continue to case, irreparable harm, damage, and injury to Paint Nail Bar.

94.     Paint Nail Bar has no adequate remedy at law.

## COUNT V:
## TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)
## (against All Defendants)

95.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

96.     Paint Nail Bar owns multiple federal registrations for the Paint Nail Bar Marks in connection with its nail salon services, namely: U.S. Reg. Nos. 4874455 and 5320334 (the "Registrations").

97.     The Registrations serve as prima facie evidence of the validity of the registered marks and Paint Nail Bar' license holder status of the Paint Nail Bar Marks and exclusive right to use the marks in commerce pursuant to 15 U.S.C. § 1115(a).

98.     Defendants have used a colorable imitation of the registered marks in connection with the sale, offering for sale, distribution, and advertising of foods and services in a manner likely to cause confusion, or to cause mistake, or to deceive.

99.    Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

100.    Defendants' willful and intentional actions have caused, and unless restrained by this Court, will continue to cause irreparable harm and injury to Paint Nail Bar.

101.    Paint Nail Bar has no adequate remedy at law.

**COUNT VI:**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(against Duffey & Co LLC)**

102.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

103.    The Franchise Agreement and the Individual Defendants' Guaranty are valid and enforceable contracts.

104.    Duffey & Co LLC, by virtue of its common ownership with PAINT Tampa LLC, knew of the existence of the Franchise Agreement and Guaranty.

105.    Duffey & Co engaged in the intentional and improper conduct described herein, which induced the Franchisee Defendants to breach various provisions of the Franchise Agreement and Guaranty, including, but not limited to, violating the post-termination non-competition provisions.

106.  As a result of Duffey & Co's tortious conduct, the Franchisee Defendants breached the Franchise Agreement and Guaranty.

107.  Duffey & Co's tortious interference has caused Plaintiff to suffer irreparable injury and Plaintiff will continue to suffer irreparable injury unless and until Duffey & Co is enjoyed from further tortious interference with the Franchise Agreement and Guaranty.

108.  Duffey & Co intentionally and maliciously caused the Franchisee Defendants to violate the in-term non-competition covenant and post-termination non-competition covenants of the Franchise Agreement. Duffey * Co caused or acted in concert with the Franchisee Defendants to lure customers into the Salon using the The Polish Society name, but the PAINT Nail Bar Marks. To further deceive Plaintiff, the Individual Defendants formed Duffey & Co on August 14, 2025, but continued to operate a PAINT Nail Bar Salon. Then, on August 21, 2025, the Individual Defendants filed a fictitious name form with the State of Florida for "The Polish Society." Then, on August 29, 2025, through counsel, the Franchisee Defendants sent the August Letter, making no mention of Duffey & Co and/or The Polish Society. Then, despite receiving the September Response on September 8, 2025, on September 10, 2025, Duffey & Co commenced operating The Polish Society in violation of the Franchisee Defendants' restrictive covenants.

109.    Because Duffey & Co intentionally and maliciously interfered with the Franchisee Defendants' compliance with the Franchise Agreement and Guaranty, Plaintiff is entitled to punitive damages.

## COUNT VII:
## BREACH OF GUARANTY
### (against the Individual Defendants)

110.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 53 hereof.

111.    The Franchise Agreement was personally guaranteed by Defendants Brooklyn Duffey and Robert Joseph Duffey (the "Guarantors") pursuant to the Principal Owner's Guaranty (the "Guaranty"). See VC, Ex. A.

112.    The Guaranty is a valid and enforceable contract supported by adequate consideration, under which the Guarantors unconditionally guaranteed the performance of the Franchisee Defendant's obligations under the Franchise Agreement.

113.    The Franchisee Defendants breached the Franchise Agreement by, inter alia, continuing to use Plaintiff's Marks, System, and Confidential Information after termination, and by operating a competing nail salon at the former franchised location in violation of their post-termination obligations.

114.    Pursuant to the Guaranty, the Guarantors are jointly and severally liable for all obligations and breaches of the Franchisee Defendants under the Franchise Agreement.

115.    As a direct and proximate result of the Guarantors' breach of the Guaranty, Plaintiff has suffered and will continue to suffer damages, including but not limited to lost royalties, lost franchise opportunities, and harm to its goodwill and reputation.

## **PRAYER**[1]

WHEREFORE, Plaintiff requests judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A.    The entry of a temporary, preliminary, and permanent injunction prohibiting Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concern with them, from:

i.    Operating a competing nail salon in Defendants' former

---

[1]    Pursuant to Section 15.6 of the Franchise Agreement, Plaintiff intends to file an Arbitration claim against Defendants for damages sustained (other than legal fees pursuant to Section 15.4 of the Franchise Agreement and/or the Defend Trade Secrets Act,). Thus, Plaintiff does not intend to waive its right to damages sustained by not raising same here but, rather, will file such claim before the American Arbitration Association. Rather, because of the relief sought, the claims brought herein are exempt from the Franchise Agreement's arbitration clause.

Paint Nail Bar franchise location or within 5 miles thereof, for a period of two years from September 9, 2025, and extending such period for the amount of time during which Defendants are willfully violating their covenants;

        ii.     Maintaining, using, or disclosing the Operations Manual; and

        iii.     Assisting, aiding, or abetting another person or business entity in engaging in or performing any of the activities enumerated above.

B.     The entry of a temporary, preliminary, and permanent injunction ordering Defendants to return all Manuals and Confidential Information to Plaintiff;

C.     For an accounting of Defendants' revenue and profits for all services performed since the formation of Duffey & Co on August 14, 2025;

D.     Awarding reasonable attorneys' fees and costs pursuant to Section 15.4 of the Franchise Agreement and/or the Defend Trade Secrets Act and/or the Lanham Act;

F.     Awarding interest as allowed by law; and

G.     Awarding such other and further relief as the Court deems just and proper.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff will be represented at trial by Matthew Margolis, Esquire.

27

Dated: September 24, 2025                Respectfully Submitted,

                                  By:  *Matthew Margolis*
                                       _____
                                       Matthew Margolis (FL Bar: 1002501)
                                       MARGOLIS PLLC
                                       700 Rosemary Avenue, #204
                                       West Palm Beach, Florida 33401
                                       Tel: 561-203-9643
                                       Email: matthew@margolispllc.com

                                       *Attorneys for Plaintiff,*
                                       *Paint Nail Bar Franchise Company, LLC*

## VERIFICATION

Mark Schlossberg, being duly sworn, deposes and says:

I am Chief Executive Officer of Plaintiff. I have read the foregoing Verified Complaint and know the contents thereof, and state that the allegations are true and correct. I based this verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true and correct. The grounds of any knowledge, information, and belief, are derived from my position as Chief Executive Officer, any personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, within limitation, my review of Plaintiff's records and conversations with Plaintiff's employees.

DocuSigned by:

*Mark Schlossberg*

FD5A7B4B89443...
**Mark Schlossberg**

# EXHIBIT A

# EXHIBIT B

# EXHIBIT C

# EXHIBIT D